DAVID C. BOLSTAD (SBN 157886)
dbolstad@safarianchoi.com
ALEXIS ASHJIAN (SBN 334079)
aashjian@safarianchoi.com
SAFARIAN CHOI & BOLSTAD, LLP
555 S. Flower Street, Suite 650
Los Angeles, CA 90071
Telephone:  (213) 481-6565

Attorneys for Plaintiff
KBS Holdco, LLC dba Regency Outdoor Advertising

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA,
# WESTERN DIVISION

| | |
|---|---|
| KBS HOLDCO, LLC DBA REGENCY OUTDOOR ADVERTISING, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WEST HOLLYWOOD; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case Number: 2:22-CV-05750<br><br>**KBS HOLDCO, LLC DBA REGENCY OUTDOOR ADVERTISING'S COMPLAINT FOR:**<br><br>1) DECLARATORY RELIEF – VIOLATION OF FIRST AMENDMENT; AND<br><br>2) INJUNCTIVE RELIEF.<br><br>(42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202) |

1

**COMPLAINT**

Plaintiff KBS Holdco, LLC dba Regency Outdoor Advertising, a California limited liability company, alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (deprivation of civil rights), and 28 U.S.C. § 2201 (declaratory relief).

2. Plaintiffs bring this action under the First Amendment to the United States Constitution and 42 U.S.C. § 1983, challenging Defendant's restriction on Plaintiff's right to freedom of speech.

3. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because the acts and omissions described herein occurred in the Central District of California.

## II. PARTIES

4. Plaintiff KBS Holdco, LLC dba Regency Outdoor Advertising ("Regency") is, and at all times relevant hereto was, a California limited liability company, with its principal place of business located in the County of Los Angeles, State of California.

5. Defendant City of West Hollywood (the "City") is, and at all times relevant hereto was, a municipal corporation organized and existing under the laws of the State of California and located in the County of Los Angeles, State of California.

6. Regency is unaware of the true names, identities, and capacities of the fictitiously named defendants identified herein as Does 1 through 10, inclusive. Regency is informed and believes, and on that basis alleges, that each fictitiously named Defendant is responsible for, participated in, or contributed to, the matters complained of herein and are legally responsible for claims and relief sought herein. For that reason, Regency may amend this Complaint to allege the true

names of one or more fictitiously named defendants, if and when they become known to Regency.

7. Regency is informed and believes, and based thereon alleges, that each defendant, including those fictitiously named herein, was the agent, servant, employee, partner, joint venturer, guarantor, or surety of the other defendants, and was acting within the scope of said agency, employment, partnership, venture, suretyship, or guaranty, with the knowledge and consent or ratification of each of the other defendants in connection with the acts and omissions alleged in the Complaint.

### III.  GENERAL ALLEGATIONS

A. <u>Regency Outdoor Advertising</u>

8. Since 1973, Regency has been a leader in the outdoor advertising industry in Southern California. Regency is duly licensed by the State of California to engage in the business of leasing outdoor advertising signs, including billboards and wallscapes, to potential advertisers. Regency works with local, national, and international businesses, and offers a variety of strategic advertising locations to help stimulate local businesses and reach advertising goals.

9. Regency's outdoor advertising signs are made available to national and local advertisers in a fashion similar to newspaper or broadcast advertising. Regency's signs are typically classified as "off-site" signs, because the signs generally do not advertise goods or services available on the premises where the sign is located. "On-site" signs, in contrast, typically refer to or incorporate signs that advertise goods, services, or businesses available on the premises where the sign is located.

10. Regency makes its signs available for public use for commercial and non-commercial messages, including, without limitation, for political, religious, charitable, and public service messages, and artistic expressions. The content of Regency's signs changes periodically, alternating between a wide range of

commercial and non-commercial messages. Accordingly, Regency's off-site signs are a forum for the expression of ideas.

11. California expressly recognizes outdoor advertising as a legitimate use of property adjacent to roads and highways. Outdoor advertising signs are recognized as serving an important function in the national economy and the California legislature, California courts, and federal courts have long supported the view that off-site signs may exist in certain areas subject to reasonable controls and regulations advancing the public's interest in safety and aesthetics.

12. Regency owns the real property and improvements thereon located at 9021 Sunset Boulevard, West Hollywood, California 90069 ("9021 Sunset"). Regency's headquarters and main offices are located at 9021 Sunset.

13. Regency also owns the real property and improvements thereon located at 8459 Sunset Boulevard, West Hollywood, California 90069 ("8459 Sunset"). Regency currently has two off-site sign structures with two static sign faces each, for a total of four sign faces, located on the 8459 Sunset property.

B.      The City's Off-Site Sign Ordinances

14. Those portions of the City's Municipal Code governing off-site signs are contained in Title 19 of the City's Municipal Code (Title 19 of the Municipal Code is referred to herein as the "Zoning Code"). Chapter 19.34 of Article 19-3 of the Zoning Code provides standards for on-site and off-site signs. Section 19.34.080 of the Municipal Code governs off-site signs, except for signs located on Sunset Boulevard. All off-site signs on Sunset Boulevard are governed by the Sunset Specific Plan (the "Plan").

15. The Plan was adopted by the City in July 1996 as a framework to achieve the City's goals of preserving the eclectic character of Sunset Boulevard, managing and directing growth, and promoting responsible development. Part Two: Section 1, Subsection 8 of the Plan (the "Sunset Billboard Plan") governs all off-site advertising signs located on the portion of Sunset Boulevard in the City

extending for a length of approximately 1.2 miles, bordered by the City of Beverly Hills to the west and the City of Los Angeles to the east (the "Sunset Strip").

16.  Advertising space on the Sunset Strip is highly coveted and presents unique opportunities for both advertisers and outdoor advertising companies. Indeed, the advertising space on the Sunset Strip is one of the most valuable advertising spaces in the country.

17.  In April 2019, the City adopted Ordinance No. 19-1063, approving an amendment to the Zoning Code and an amendment to the Sunset Billboard Plan (the amendment to the Sunset Billboard Plan is referred to herein as the "2019 Amendment"). Prior to the adoption of the 2019 Amendment, there were approximately 89 billboards located along the 1.2 miles that comprise the Sunset Strip.

18.  The 2019 Amendment included new standards and guidelines to regulate the distribution, size, location, and operation of new and modified billboards. The 2019 Amendment requires all applications for new off-site signs to be screened for "design excellence" in accordance with a process and procedures established by the City Manager, or designee. Regency is informed and believes, and based thereon alleges, that the 2019 Amendment allows for only 18 new signs on the Sunset Strip over the subsequent 15-year period.

19.  Regency is informed and believes, and based thereon alleges, that the City Manager or its designees created the Sunset Arts and Advertising Program for the purposes of conducting the screening for "design excellence."

20.  The 2019 Amendment does not provide the City Manager with any guidelines or parameters for establishing a process and procedure for the design excellence screening. Rather, the 2019 Amendment delegates all discretion and decision-making authority concerning the necessary prerequisites for off-site signs on the Sunset Strip to the City Manager.

21. Regency is informed and believes, and based thereon alleges, that the City Manager delegated that authority to the Design Excellence Screening Committee (the "Screening Committee").

22. The Screening Committee then screens applications for "design excellence" based on general "design principles" enumerated in the 2019 Amendment.

23. After the screening process, the top-scoring submissions are granted "concept awards," valid for a period of two years, making those prevailing applicants eligible to apply for a development agreement with the City. Submissions that are not granted "concept awards" are not eligible to apply for a development agreement with the City, and there exists no process for a hearing on the applications for a concept award, and no process for any appeal or review of the Screening Committee's decision.

24. Once an applicant is awarded a concept award, the applicant may begin the process of applying for sign permits, development agreements, and all other City requirements for erecting an off-site sign. As a part of this process, the applicant usually meets with the City's Planning Commission and other committees to work through and resolve any problems with the applicant's proposal or designs.

25. An applicant is not guaranteed to be successful in its applications for permits or in its negotiations with the City for the terms of a development agreement. However, applicants who are granted concept awards still have the opportunity to try, whereas applicants who are not granted concept awards are not eligible to apply for a development agreement with the City, which is the only way for a sign applicant to legally erect and maintain a new off-site sign.

26. In effect, the Sunset Arts and Advertising Program acts as an arbitrary prerequisite and forecloses all except concept award winners from even beginning the process of working in conjunction with the City and its relevant commissions

to modify proposals to be compliant with the City's requirements. The process effectively allows the City Manager to cut off outdoor advertising companies from even being given the opportunity to try – adding an additional, wholly subjective requirement that must be met before an applicant may begin to engage with the City to meet all of the other requirements of West Hollywood Municipal Code.

C.  Submissions to the Screening Committee

27. On October 14, 2019, the City opened the initial round of submissions for the Sunset Arts and Advertising Program ("Round 1"). Applicants could submit their applications to the City until November 4, 2019.

28. In December 2019, the Screening Committee began its review of the Round 1 submissions. Round 1 submissions were reviewed and scored based on 33 criteria related to design quality, economic development, public benefit, sustainability, and adaptable design, which the City claims were formulated based on the 2019 Amendment's design principles. Each Round 1 submission was scored out of a total of 450 possible points.

29. After the Screening Committee members finished scoring, the seven Screening Committee member scores for each application were averaged and sorted from highest to lowest.

30. 43 applications were submitted to the Screening Committee in Round 1. Of the 43, only 21 applications were granted concept awards.

31. On September 24, 2021, the City published a submission guide (the "Submission Guide") for a second round of submissions for the Sunset Arts and Advertising Program ("Round 2"). Proposals and designs could be submitted until February 28, 2022.

32. Round 2 applicants were also required to pay a non-refundable fee of $10,362 to the City upon submitting a screening application. In addition, preparing the proposals and designs was a significant undertaking of time and resources for applicants given the complexity of the submissions. Applicants incurred

considerable expense in connection with the submissions, including, without limitation, costs relating to architects, engineers, and consultants engaged to work on various aspects of the submissions.

33. Round 2 submissions were reviewed and scored by a six-person Screening Committee, composed of largely the same persons as the Screening Committee members in Round 1. Round 2 submissions were reviewed and scored based on ten vague criteria included in the Submission Guide.

34. The evaluative criteria provided in the Submission Guide merely set forth ten questions instead of objective standards. For instance, one of the criteria asks: "Does the project showcase a commitment and sensitivity to the importance of diversity in the architectural design and/or advertising industry?" The Submission Guide provides applicants with no definite and objective guidance or standards on what would meet this criteria.

35. Each Round 2 submission was scored out of a total of 250 possible points, but were required to reach a threshold of 225 points to secure a concept award.

36. The Submission Guide states that the Screening Committee's "collective decision making shall be the final decision and function as an appeal," leaving applicants who did not secure a concept award with no path forward to entering into a development agreement with the City.

37. 27 applications were submitted to the Screening Committee in Round 2. Only ten applications were granted concept awards.

38. Five of the ten applications that were granted concept awards in Round 2 were submitted by the media company Orange Barrel Media. Three of the remaining five top-scoring applications in Round 2 were submitted by the media company BIG Outdoor. In sum, eight of the ten concept awards were awarded to just two media companies.

39. Neither the Plan, Ordinance No. 19-1063, the 2019 Amendment, the City's website, nor any of the materials published in relation to the Sunset Arts and Advertising Program provide any information about the formation of the Screening Committee or the screening process for Screening Committee members and how Screening Committee members were ultimately chosen.

40. On February 28, 2022, Regency submitted two separate applications for consideration in Round 2 pursuant to the procedures set forth in the Submission Guide.

41. On June 24, 2022, Regency received two rejection letters from Paige Portwood, an associate planner with the City. The rejection letters did not provide Regency with any information about why its submissions were not selected as top-scoring submissions, nor did it provide any explanation about the criteria submissions were scored on and how Regency's submissions were scored.

42. That same day, the City published a document on its website with all the submitted applications' scores. This document provided a breakdown of each reviewer's total score for each submission, and each submission's average score for the ten evaluative criteria.

43. As expected, with the lack of objective and definite evaluative criteria, the scores from the six reviewers varied dramatically. For instance, one of Regency's submissions received the following scores:

Reviewer #1: 211
Reviewer #2: 95
Reviewer #3: 191
Reviewer #4: 230
Reviewer #5: 168
Reviewer #6: 188

44. Regency's lowest score on that submission was 135 points less than its highest score on that same submission. But the wide range of scores is not unique to Regency's submissions.

45. Indeed, there is a lack of consistency in scoring for almost all the submissions except for the winning submissions from Orange Barrel Media and Big Outdoor. Even one of the top-scoring projects, submitted by media company Faring, had a 63-point discrepancy between its lowest score and its second-to-last lowest score. Two of the reviewers awarded the Faring submission perfect scores, while one reviewer scored the submission a mere 160 out of 250 points.

46. The vague evaluative criteria provided to Round 2 applicants, coupled with the vastly inconsistent scores awarded across almost all submissions, make clear that the entire screening process is subject to the whims and personal tastes of each individual committee member rather than a narrow, objective and definite set of standards.

47. The 2019 Amendment and Sunset Arts and Advertising Program grant the Screening Committee members, and by extension the City Manager, unduly broad and unbridled discretion in determining whether an entity can even *apply* for a development agreement.

48. Regency's representative reached out to Ms. Portwood to discuss Regency's submissions and scores, but Ms. Portwood was unable to provide any substantive feedback on either submission.

49. Regency is now ineligible to apply for a development agreement with the City for a new offsite sign on the Sunset Strip until the City opens the next round of submissions. The City has made no announcements about when the next round of submissions will be.

/ / /

/ / /

/ / /

## FIRST CAUSE OF ACTION

### Declaratory Relief – Violation of First Amendment

### (Against the City – 42 U.S.C. § 1983)

50. The allegations set forth in paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

51. An actual and justiciable controversy has arisen and now exists between Regency and the City concerning the constitutionality of Ordinance No. 19-1063, the 2019 Amendment, and the resulting Sunset Arts and Advertising Program.

52. Regency contends that Ordinance No. 19-1063 adopting the 2019 Amendment, and the resulting Sunset Arts and Advertising Program are facially unconstitutional and invalid prior restraints because they abridge rights secured by the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983 as set forth above, including in that:

   (a) By requiring applicants to engage in a subjective process as a prerequisite to be eligible to apply for a development agreement with the City, Ordinance No. 19-1063 and the resulting Sunset Arts and Advertising Program constitutes an unlawful prior restraint on Regency's right to engage in commercial speech, a protected First Amendment activity;

   (b) Ordinance No. 19-1063 vests unbridled discretion in the City Manager and its designee, here, the Screening Committee, to deny Regency and other applicants the right to even *apply* for a development agreement with the City, as further evidenced by the Screening Committee's scores being final and unappealable.

53. Regency is informed and believes, and based thereon alleges, that the City disputes these contentions.

/ / /

54. Regency desires a judicial determination of the rights, duties, and obligations of the parties concerning Ordinance No. 19-1063, the 2019 Amendment, and the resulting Sunset Arts and Advertising Program. Specifically, Regency desires a declaration that Ordinance No. 19-1063 adopting the 2019 Amendment, and the resulting Sunset Arts and Advertising Program is unconstitutional as an invalid prior restraint under the First Amendment of the United States Constitution.

55. A judicial declaration is necessary and appropriate at this time in order that Regency and the City may ascertain their rights, duties, and obligations with respect to Ordinance No. 19-1063 and the Sunset Arts and Advertising Program.

56. If Regency is successful in this action, a significant benefit will be conferred on the general public, and Regency is therefore entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against the City – 42 U.S.C. § 1983)

57. The allegations set forth in paragraphs 1 through 56 are re-alleged and incorporated herein by reference.

58. Regency is informed and believes, and based thereon alleges, that unless and until restrained by this Court, the City will continue to issue new sign permits, enter into development agreements, and authorize construction of new signs on the Sunset Strip pursuant to the unconstitutional Ordinance No. 19-1063 and resulting Sunset Arts and Advertising Program, and foreclose Regency from submitting applications for development agreements to the City for off-site signs located on the Sunset Strip.

59. Unless the City is enjoined and restrained from engaging in said conduct, Regency will be irreparably injured in that it will be deprived of

constitutional rights guaranteed under the United States Constitution, will suffer substantial loss of rents, profits, and good will. Moreover, because the 2019 Amendment only allows for 18 new signs to be built on the Sunset Strip over the subsequent 15-year period, Regency will be irreparably harmed if the City continues issuing new sign permits, entering into new development agreements, and authorizing construction of new signs on the Sunset Strip pursuant to the unconstitutional Ordinance No. 19-1063 and resulting Sunset Arts and Advertising Program and is not enjoined from such conduct.

60.  Permitting the City to continue enforcing the scheme set forth in the unconstitutional Ordinance No. 19-1063 and resulting Sunset Arts and Advertising Program will also have a chilling effect on the exercise of First Amendment rights by members of the public.

61.  Regency has no adequate remedy at law to prevent or redress this irreparable injury.

62.  If Regency is successful in this action, a significant benefit will be conferred on the general public, and Plaintiffs are therefore entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Regency prays for judgment as follows:

1.  For a judicial declaration that Ordinance No. 19-1063, the 2019 Amendment, and the resulting Sunset Arts and Advertising Program is unconstitutional as an invalid prior restraint under the First Amendment of the United States Constitution; and

/ / /
/ / /
/ / /
/ / /
/ / /

2.	For temporary, preliminary, and permanent injunctive relief restraining the City from issuing new sign permits, entering into development agreements, or authorizing construction of new signs on the Sunset Strip pursuant to the unconstitutional Ordinance No. 19-1063 and resulting Sunset Arts and Advertising Program, and foreclosing Regency from submitting applications for development agreements to the City for off-site signs located on the Sunset Strip.

Dated:  August 14, 2022                              SAFARIAN CHOI & BOLSTAD LLP

By: _____
DAVID C. BOLSTAD
ALEXIS ASHJIAN
Attorneys for Plaintiff KBS Holdco, LLC dba Regency Outdoor

**COMPLAINT**