UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KBS HOLDCO, LLC,<br><br>                Plaintiff,<br><br>     v.<br><br>CITY OF WEST HOLLYWOOD, *et al.*,<br><br>                Defendants. | Case No. 2:22-cv-05750-FLA (GJSx)<br><br>**ORDER GRANTING DEFENDANTS ORANGE BARREL MEDIA, LLC AND DAVID EHRLICH'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT [DKTS. 56, 57]** |

### RULING

Before the court are Defendants Orange Barrel Media, LLC ("Orange Barrel") and David Ehrlich's ("Ehrlich") Motions to Dismiss ("Motions," Dkts. 56, 57) the First Amended Complaint ("FAC," Dkt. 36).[1] Plaintiff KBS Holdco, LLC d/b/a Regency Outdoor Advertising ("Plaintiff" or "Regency") opposes the Motions. Dkts. 60, 61. On July 5, 2023, the court took the Motions under submission, finding the matters appropriate for decision without oral argument. Dkt. 70; *see also* Fed. R. Civ. P. 78(b); Local Rule 7-15.

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers listed natively.

1

1    For the reasons stated herein, the court GRANTS the Motions and DISMISSES Plaintiff's claims against Orange Barrel and Ehrlich with 21 days' leave to amend.

## BACKGROUND

On April 1, 2019, the City of West Hollywood (the "City") passed, approved, and adopted Ordinance No. 19-1063 (the "Ordinance"), which amended sections of Title 19 of the West Hollywood Municipal Code (the "Zoning Code") and the City's existing Sunset Specific Plan regarding off-site signage in the Sunset Specific Plan Area (the "Sunset Strip").  Dkt. 57-3 ("Ordinance") at 1, § 2.  The amendments to the Sunset Specific Plan (the "Amended Billboard Plan") include "new standards and guidelines to regulate the distribution, size, location, and operation of new and modified billboards and tall walls," and design principles intended to "ensure high-quality signage projects that are creative, contextual for Sunset Boulevard, and sensitive to adjacent land uses." *Id.*  Under the Amended Billboard Plan, applications for new off-site signs must be "screened for design excellence in accordance with a process and procedures established by the City Manager, or designee" and granted concept awards before applicants may apply for development agreements with the City. *Id.* at 11.  According to Plaintiff, the City Manager or his or her designees created the Sunset Arts and Advertising Program to conduct the screening process and delegated all discretion and decision-making authority to the Design Excellence Screening Committee (the "Screening Committee").  FAC ¶¶ 26–28.

On September 24, 2021, the City published a submission guide for the second round of submissions for the Sunset Arts and Advertising Program ("Round 2").  FAC ¶ 37; Dkt. 52-5.  Plaintiff and Orange Barrel were among the companies that submitted applications during Round 2.  FAC ¶ 39.  Defendant Ehrlich was a member of the Screening Committee. *Id.*  Ultimately, both of Plaintiff's applications were denied. *Id.* ¶ 52.  Plaintiff contends the screening process was arbitrary and based on subjective standards for which the City provided no real guidance, and that it gave the Screening Committee unbridled discretion in choosing which billboard operators were

allowed to apply for and obtain new billboard sites on the Sunset Strip. *Id.* ¶¶ 2, 29. Plaintiff further alleges Ehrlich has a longstanding business relationship with Orange Barrel, and that he worked with other members of the Screening Committee to rig the screening process in favor of Orange Barrel. *Id.* ¶¶ 28, 47–49.

On April 12, 2023, Plaintiff filed the operative FAC, asserting six claims against Defendants Orange Barrel and Ehrlich: (1) the sixth cause of action for intentional interference with prospective economic advantage; (2) the seventh cause of action for negligent interference with prospective economic advantage; (3) the eighth cause of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(3); (4) the ninth cause of action for violation of the Clayton Act, 15 U.S.C. § 15(a); (5) the tenth cause of action for violation of the Cartwright Act; and (6) the eleventh cause of action for violation of California Business & Professions Code § 17200, *et seq*. (the Unfair Competition Act or "UCL"). FAC ¶¶ 98–141. Plaintiff also asserts five causes of action against the City which are not at issue on the subject Motions. *Id.* ¶¶ 61–97.

## DISCUSSION

I.  **Legal Standard**

Under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of the claims asserted in the complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

3

(2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and parentheticals omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The court need not accept as true allegations that contradict matters properly subject to judicial notice or established by exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* A court must normally convert a Rule 12(b)(6) motion into a motion for summary judgment under Fed. R. Civ. P. 56 if it considers evidence outside the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

///

4

II. Analysis

    A. The *Noerr-Pennington* Doctrine

"Private efforts to influence governmental bodies or courts, even for anticompetitive purposes, enjoy an exemption from the antitrust laws grounded in the First Amendment right to petition." *Boulware v. State of Nev., Dep't of Hum. Res.*, 960 F.2d 793, 797 (9th Cir. 1992) (citing, *e.g.*, *United Mine Workers v. Pennington*, 381 U.S. 657, 669–71 (1965); *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137–38 (1961)). "The *Noerr-Pennington* doctrine shields lobbying and litigation activity from the reach of the antitrust laws so long as the activity is not a 'sham.'" *Id.* (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972)). "The 'sham' exception to Noerr encompasses situations in which persons use the governmental process -- as opposed to the outcome of that process -- as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991). "A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result, but does so through improper means." *Id.* (quotation marks and citations omitted).[2]

"[T]he Noerr-Pennington doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006); *see also White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("While the Noerr-Pennington doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore … applies equally in all contexts."). This doctrine has also been extended beyond the statutory context to

---

[2] As the Supreme Court explained: "A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Omni*, 499 U.S. at 380.

bar state law torts based on activity that implicates the Petition Clause, including tortious interference with prospective economic advantage claims. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) ("[B]ecause Noerr-Pennington protects federal constitutional rights, it applies in all contexts, even where a state law doctrine advances a similar goal.")

"In order not to chill legitimate lobbying activities, it is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply." *Boone v. Redev. Agency of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988). Accordingly, where claims implicate the right to petition governmental bodies under *Noerr-Pennington*, "[the] complaint must include allegations of the specific activities which bring the defendant's conduct into one of the exceptions to *Noerr-Pennington* protection." *Or. Nat. Res. Council v. Mohla*, 944 F. 2d 531, 533 (9th Cir. 1991); *see also Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1056–57 (9th Cir. 2005) (holding plaintiffs must plead sufficient facts to establish exemption from *Noerr-Pennington* under notice pleading standards); *Iqbal*, 556 U.S. at 678. "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Mohla*, 944 F. 2d at 533.

Orange Barrel and Ehrlich contend Plaintiff's claims against them are barred under the *Noerr-Pennington* doctrine. Dkt. 56 at 16–20; Dkt. 57 at 12–16. Plaintiff responds that its claims fall within the sham exception to the doctrine. Dkt. 60 at 18–19; Dkt. 61 at 18–19. The court agrees with Orange Barrel and Ehrlich. Plaintiff's allegations and claims against Orange Barrel and Ehrlich are directly analogous to those of *Omni*, 499 U.S. 365.

There, the Supreme Court held a billboard operator, Columbia Outdoor Advertising, Inc. ("COA"), and the mayor and other members of the city council of Columbia, South Carolina were entitled to *Noerr-Pennington* immunity from claims they engaged in a "secret anticompetitive agreement" to enact a sham ordinance and related approval process to protect COA's monopoly position and prevent competitors

from entering the billboard market. *Id.* at 367–68, 383–84. In reaching its decision, the Supreme Court rejected the plaintiff's arguments that COA's interference with the plaintiff's business relationships rendered its lobbying activity a "sham," as COA acted "not through the very process of lobbying, or of causing the city council to consider zoning measures, but rather through the ultimate *product* of that lobbying … viz., the zoning ordinances." *Id.* at 381 (emphasis in original). The Supreme Court additionally rejected the existence of a "conspiracy" exception, "which would apply when government officials conspire with a private party to employ government action as a means of stifling competition." *Id.* at 382–83.[3]

Here, like in *Omni*, Plaintiff alleges Orange Barrel and Ehrlich entered into "a fraudulent, collusive scheme" with the City "to rig the screening process for proposals with respect to new billboard sites on the Sunset Strip in West Hollywood, to prevent Regency from obtaining new billboard sites, and to allocate an unfair number of billboard sites to Orange Barrel." FAC ¶ 1. According to Plaintiff, "[a]s a result of such activities, Regency has suffered economic losses, including loss of advertising relationships and revenue." *E.g.*, *id.* ¶ 121. As Plaintiff alleges Defendants successfully used the *outcome* of the Round 2 screening process (*i.e.*, the grant or denial of concept awards) to prevent Regency from obtaining new billboard sites and allocate an unfair number of billboard sites to Orange Barrel, Plaintiff's claims do not fall within the sham exception and are barred under the *Noerr-Pennington* doctrine. *See Omni*, 499 U.S. at 380–84; *see also Empress*, 419 F.3d 1052 (affirming dismissal of claims under analogous circumstances). Plaintiff's argument, thus, fails.

/ / /

---

[3] Accordingly, the Ninth Circuit has held "there is no 'conspiracy' exception to the Noerr-Pennington doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights." *Empress*, 419 F.3d at 1057 (citing *Omni*, 499 U.S. at 382–83). "In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens." *Id.*

7

Plaintiff raises several additional arguments for why the court should not dismiss its claims under the *Noerr-Pennington* doctrine. First, Plaintiff contends "[t]he question of whether something is a genuine effort to influence government action, or a mere sham is a question of fact" that cannot be determined at the pleading stage. Dkt. 60 at 13 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253–54 (9th Cir. 1982)) (quotation marks omitted); Dkt. 61 at 13 (same). The court disagrees. While claims that implicate the *Noerr-Pennington* doctrine may involve questions of fact that are better addressed at summary judgment or at trial, the facts pleaded here—even when viewed in the light most favorable to Plaintiff—fall squarely within the scope of *Omni* and are insufficient to state valid claims against Orange Barrel and Ehrlich as a matter of law. *See Empress*, 419 F.3d at 1057 (affirming dismissal for failure to state a claim where, "based on the [plaintiffs'] pleadings, it appear[ed] beyond a doubt that they [could] prove no facts demonstrating that [the defendant's] activities [fell] under the sham exception to the Noerr-Pennington doctrine"). Plaintiff's argument, thus, fails.

Second, Plaintiff contends "*Noerr-Pennington* only protects legitimate petitioning activity—it does not exonerate Orange Barrel and Ehrlich from liability for their fraudulent and illegal activities in rigging the bidding process and falsifying results." Dkt. 60 at 14; Dkt. 61 at 14. Plaintiff quotes *Whelan v. Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995), to argue "***[a]ttempts to influence governmental action through overtly corrupt conduct … are not normal and legitimate exercises of the right to petition***, and activities of this sort have been held beyond the protection of *Noerr*." Dkt. 60 at 15 (emphasis in opposition brief); Dkt. 61 at 15 (same). Plaintiff, however, omits key language in quoting this opinion. The full passage states: "Attempts to influence governmental action through overtly corrupt conduct, such as bribes (in any context) and ***misrepresentation (in the adjudicatory process)***, are not normal and legitimate exercises of the right to petition, and activities of this sort have been held beyond the protection of *Noerr*." *Whelan*, 48 F.3d at 1255 (emphasis

8

added).

*Whelan* does not support Plaintiff's contention that misrepresentations made in connection with a *legislative* process render conduct beyond *Noerr-Pennington* protection. *See id.* at 1255 (recognizing misrepresentations are "condoned in the political arena"); *see also Omni*, 499 U.S. at 382–84 (recognizing deception in favor of successful protected petitioning activity, "reprehensible as it [may be]," falls within the scope of *Noerr-Pennington* immunity). Plaintiff's other cited cases are similarly inapposite and/or distinguishable. *See, e.g.*, *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005) (finding antitrust claims based on discovery misconduct during *litigation* not barred by *Noerr-Pennington*); *Bagley Pyankovska v. Abid*, 65 F.4th 1067 (9th Cir. 2023) (finding statutory claims based on the use of illegally obtained evidence during *litigation* not barred by *Noerr-Pennington*). The court will not deny the Motions on this basis.

Third, Plaintiff contends the *Noerr-Pennington* doctrine does not apply because Plaintiff has alleged Orange Barrel and Ehrlich engaged in "fraudulent and illegal acts." Dkt. 60 at 16–17; Dkt. 61 at 16–17. To the extent this argument is distinct from Plaintiff's prior argument, Plaintiff fails to allege any plausible facts regarding illegal conduct sufficient to establish this exception applies. *See Whelan*, 48 F.3d at 1255 (recognizing non-protected "overtly corrupt conduct, such as bribes (in any context) and misrepresentation (in the adjudicatory process)" are not protected under *Noerr-Pennington*). Plaintiff's argument, thus, fails.

Fourth, Plaintiff cites cases including *Mkay, Inc. v. City of Huntington Park*, Case No. 2:17-cv-01467-SJO (AFMx), 2017 U.S. Dist. LEXIS 223306, at *9, 16–17 (C.D. Cal. Dec. 21, 2017), to argue that illicit schemes to defraud applicants in a city bidding process are not entitled to protection under the *Noerr-Pennington* doctrine. Dkt. 60 at 14–16; Dkt. 61 at 14–16. *Mkay*, 2017 U.S. Dist. LEXIS 223306, at *15–16, cited *California Motor Transport*, 404 U.S. at 513, for the proposition that "[c]onspiracy with a licensing authority to eliminate a competitor is not immunized

under *Noerr-Pennington*." *Omni*, 499 U.S. at 381–82, however, expressly distinguished and limited that portion of *California Motor Transport* to circumstances in which "the conspirators' participation in the governmental process was itself claimed to be a 'sham,' employed as a means of imposing cost and delay."[4] *Mkay* did not consider or discuss *Omni* and, to the extent it applies *California Motor Transport* beyond the limits set by the Supreme Court, does not reflect good law. Plaintiff's other cited cases either predate *Omni* or are district court decisions that also did not consider or discuss that case. *See* Dkt. 60 at 17–18; Dkt. 61 at 17–18. The court, therefore, will not deny the Motions on this basis.

Fifth, Plaintiff contends "applying *Noerr-Pennington* here would contradict its purpose of protecting First Amendment Rights." Dkt. 60 at 18; Dkt. 61 at 18. Plaintiff cites *California Motor Transportation*, 404 U.S. at 515, to argue that "First Amendment rights may not be used as the means or pretext for achieving 'substantive evils.'" Dkt. 60 at 18; Dkt. 61 at 18. As stated, Plaintiff's argument is precluded by the Supreme Court's reasoning and holding in *Omni*, and the court will not deny the Motions on this basis.

In sum, the court finds Plaintiff's claims against Orange Barrel and Ehrlich are barred by the *Noerr-Pennington* doctrine.

/ / /

/ / /

/ / /

---

[4] The Supreme Court stated in relevant part: "*California Motor Transport* involved a context in which the conspirators' participation in the governmental process was itself claimed to be a 'sham,' employed as a means of imposing cost and delay. … The holding of the case is limited to that situation. To extend it to a context in which the regulatory process is being invoked genuinely, and not in a 'sham' fashion, would produce precisely that conversion of antitrust law into regulation of the political process that we have sought to avoid." *Omni*, 449 U.S. at 381–82.

**CONCLUSION**

For the aforementioned reasons, the court GRANTS the Motions and DISMISSES Plaintiff's claims against Orange Barrel and Ehrlich with 21 days' leave to amend. Having granted the Motions on this basis, the court need not address the parties' remaining arguments. Orange Barrel's request for judicial notice (Dkt. 56-1) is DENIED without prejudice as moot.

IT IS SO ORDERED.

Dated: July 8, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge